Good morning, Your Honors. I'm Scott McMillan. I represent myself and my law corporation. I assume that everybody's read the brief, so we know what the fundamental issue here is. It really gets down to the Scheidler case and what is property and whether it can be exercised, whether the allegations in the complaint that I filed on behalf of myself and my law corporation satisfy the requirement that the property was something that could be pursued or obtained, that could also be exercised, transferred, or sold. The property that was pursued might not have been the same property that was obtained. In some cases it was. For instance, everybody here in California, we can recognize the right to use my likeness, my name, to send letters under my cover. That is my property. That is my property. That is property of my law corporation. So when that was obtained and that was used, likewise with financial accounts were accessed or attempted to be accessed, that is well established that that's property that can be obtained. In all of your substantive RICO counts, you allege that they obtained from you your intangible property right to practice law free of threats and to practice in accordance with the California rules of professional conduct. These other things that you just talked about, even assuming that you somehow gave your consent, which is another issue, they're not alleged in the substantive RICO counts as what was part of the extortion. I understand that. That's right in the First Amendment complaint. However, the set of property rights that encompasses a law practice is made up of many different things. It includes the right to use your name. So if they say, you're going to tell your client, Susan A., to settle this case, or we're going to take another part of your business, I would submit, Your Honors, that that satisfies the definition of property. Because as this Court has recognized before, property, for instance, is something for the definition of theft. It can include not just taking possession, but exercising control over it. And the Supreme Court in Shidler did not intend, it was very specific about not intending to dismiss all of the prior authority preceding Shidler, such as Tropicana, where there was actually a business, there were threats that were made to stay out of a certain area for waste management, for waste refuse control. That those allegations satisfied the definition of property. You're not going to practice in this area, you're not going to conduct the waste management business in this area, or someone's going to get hurt. Those were the allegations in Tropicana. In Shidler, it left those intact. They were very specific about that. This case, another issue between this and Shidler, is in Shidler, the Supreme Court was very specific. They said the activists intend to shut the clinics down. It wasn't just take their property, move in, and start using the buildings themselves. That would comprise a taking. It was to interfere with their right to do something that they had a right to do. Their ability to act in a way that they had a right to, and the court said that wasn't extortion. They said that that was coercion. That satisfied the coercion. But the Supreme Court also, in Shidler, said, if they did something more. See, here, in these set of facts, there was something more. It wasn't just, let's for instance say, blocking the streets or interfering with the advertising. It was, Mr. Shaker took an extra step and took my name and started using it as if he was me. So there was that something more, and that is a recognized property right. And I'm entitled to, I believe, protect that under the RICO statute. Your Honor had a very pointed question. If you have another one, I'm ready to address it. Otherwise, I want to reserve some time for the others. Okay. Do you want to reserve the rest of your time for Roboto? Yes, I do. Okay, very good. So I understand that counsel for the defendants are going to split their time? Yes, Your Honor, we are. I think the agreement is that I was going to be speaking for Darren Shaker for seven minutes, and then counsel would reserve three minutes. That's fine. If necessary. So may it please the court, Stephen Larson on behalf of Darren Shaker. Your Honors, I believe the issue is not so much the question initially raised by counsel as to what is property, because we certainly recognize that there are many types of property and there can be intangible property. But what the Supreme Court, what Justice Rehnquist in his opinion and Slider did clearly was he put a very tightening or cabining on that obtainable or the obtaining element of extortion. Not suggesting for a moment here that there's been bad or improper conduct. That's not the issue before us. It's a very limited issue in terms of whether this constitutes RICO and then by extension whether there can be a conspiracy for RICO alleged. And I think the district court was absolutely correct in finding under a clearly controlling Supreme Court law that that's not the case. And of course I am referring to Shidler and the court's decision in Shidler. It makes quite clear that the types of intangible property which are clearly set forth in the First Amendment complaint. And there's basically two. In the first cause of action or the first racketeering act as it were, refers to the property right to practice law and publish court decisions on the Internet. And then the second one which is set forth in Acts 2 through 10 is the right to practice law free of threats and to practice in accordance with California rules of professional conduct. And to borrow the language of the Supreme Court in the follow-up case, in the Sakar case, it really is almost absurd to think that Darren Shaker was attempting to obtain the right to practice law. Obtaining Mr. MacMillan's right to practice law in accordance with the California rules of professional conduct or obtaining his right to practice law and to publish things on the Internet in the way that the Supreme Court has clearly articulated what that obtaining must involve, which is obtaining in an exclusive sense that you now have the right to transfer and sell and to give that to somebody else. And that really borders on the absurd. What about his contention that your client somehow obtained his name and likeness and maybe couldn't transfer those intangible property interests but nonetheless could exploit them in some fashion? Would that count? Well, first and foremost, that's not what's alleged as the racketeering acts. And I think this was an opportunity to amend what was passed on and that's not what's before the court. But secondly, I think that kind of falls into this absurd category. It's not what was going on even accepting the allegations. Mr. Shaker apparently or at least allegedly was very upset with the appellant and was arguably committing acts that were designed to coerce him to stop doing things, whether it was by embarrassment, whether it was by threats, whatever it was by. I'm not going to concede that anything illegal took place, but the allegations are what the allegations are. But there is certainly no indication and there is certainly no argument to be made that somehow what was going on here, Mr. Shaker was trying to take over the image and likeness and seize that as a property right in the sense that he would then be in a position to have exclusive control of that and then be able to sell or transfer that. It's kind of the round hole, square peg or vice versa issue here. That's not what extortion is particularly as defined by the Supreme Court. And I know that this is all set forth in the briefs, but the language set forth at page 404 of the Scheidler case is right on. I mean, the court writes, most importantly, we have construed the extortion provision of the Hobbs Act at issue in these cases to require not only the deprivation, but also the acquisition of property. And there's no acquisition here. The court goes on to state, with this understanding of the Hobbs Act's requirement that a person must obtain property from another party to commit extortion. You know, we turn to the facts of these cases. The court notes that there is no dispute in these cases that petitioners interfered with, disrupted, and in some instances completely deprived respondents of their ability to exercise their property rights. And that would be to answer this court, your question, Your Honor, even if you deprive the person, that's still not enough. You've got to take it that one step further and have the acquisition. And that's where I think the allegations here kind of enter the nonsensical or the absurd. The court continues. It says, likewise, petitioner's counsel readily acknowledged that oral argument, that aspects of his client's conduct were criminal. Just to be clear, for the record, I'm not doing that, but I certainly understand that there's problematic conduct here. But even when their acts of interference and disruption, the court writes, continuing on page 405, achieved their ultimate goal of shutting down a clinic that performed abortions, such acts did not constitute extortion because petitioners did not obtain the respondent's property. Petitioners may have deprived or sought to deprive respondents of their alleged property right of exclusive control of their business assets. And there's that phrase about exclusive control. But they did not acquire any such property. Petitioners neither pursued nor received something of value from respondents that they could exercise, transfer, or sell. And even using these allegations that appear really for the first time in the appellant's opening brief, we're still not at a point where there's anything that could be exercised, transferred, or sold. If the complaint had alleged attempted extortion of name and logo, would that have been a sufficient predicate act for a RICO claim? I don't think so, Your Honor. I don't think in the context here that that would suffice. I mean, there are certain instances where I could imagine if someone would try to steal someone's copyright in something, which is a well-recognized property, and then take that and then publish that book impersonating that person. But that's not the allegations here. It's nothing like that. It's not like Mr. Shaker went in and tried to take over Mr. McMillan's entire law practice, make him disappear, and now be Mr. McMillan and practicing his law. I mean, I would have to think that through. But, again, that's not what's even close to being alleged here. So I don't think so. And then the conspiracy, which also, I mean, I recognize that for the conspiracy, there doesn't have to be the completed RICO Act, and that there at least has to be an articulable RICO Act that is the object of the conspiracy. And you don't have that in the conspiracy for the same reason that it falls under the RICO Act itself. Okay. Yeah, why don't we hear from your co-counsel? If there's any questions, I'm happy to answer them, but otherwise I'm going to turn to my colleague. Okay. Very good. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Ryan Baker on behalf of Anya Shaker. First, I want to, on behalf of Ms. Shaker and also Ms. Nicole Shaker, join in the arguments Mr. Larson has just made. We certainly agree there's absolutely been no RICO alleged here, and therefore there can be no conspiracy, which is the only claim that applies to Ms. Vanya Shaker. And if we accept that argument, then there's no need for us to listen to what you're about to tell us? That's exactly right. That's exactly right. So unless the Court has any questions, I'm not even going to. I want to hear what you have to say. I just want to make sure. If we accepted that, then we wouldn't need to get to the issue that you wanted to. Any service. That's absolutely right, Your Honor. So I'll make a couple of quick points. The first thing I want to say is the standard here is not de novo. It's only de novo where there's no facts in dispute. Here there were conflicting declarations. There was a declaration on the one hand of Mr. Wing, the process server, in which he said he saw somebody in a hoodie, described someone. He repeatedly calls it Ms. Vanya Shaker, but he doesn't know, and it's quite clear from his declaration that he doesn't know. And then you have, on the other hand, the declarations of Ms. Shaker that established that she was not even at her home at the time. She was, in fact, in L.A. County, not in San Diego. She was having dinner. She's provided receipts. Of course, Mr. McMillan wants to quibble with the evidence and say why doesn't she have a camera record or something like that, but that's unfortunately not the standard for Mr. McMillan. The Court reached its conclusion, and, in fact, to get into its findings of fact, the standard is clear error. There's no clear error. There was no evidentiary hearing required here either. The authority that Mr. McMillan has offered in support of that argument that the District Court needed to have an evidentiary hearing is from the Seventh Circuit. The Ninth Circuit case law holds clearly the Court has discretion to make this finding, which it did. It found no service. There was no service. But more fundamentally and importantly, there's no RICO claim. And with that, I'll submit, unless the Court has any questions. No, it doesn't look like it. Thanks very much. Thank you, Your Honor. You have plenty of time left for rebuttal. There is no requirement that the obtaining of the acquisition be exclusive. That language only appears in Shidler with respect to what they were about allegation, but there's no actual statement in the Hobbs Act or any of the associated law that requires that the possession or the acquisition be an exclusive acquisition. It can be partial. And as we stated here, the number one RICO predicate act was the effort to obtain editorial control over Fear Not Law. Even though there's 60,000 cases up there, three or four of which were Mr. Shaker's, to the extent that he wanted to obtain something and demand that that was to be turned over or to be deleted, that is an exercise of control. Even though he's not physically taking over the server or renaming the site, that was something that he sought to obtain. And I believe that the complaint, I mean, it spills out the facts. It spills out there's no displeading. So whether or not they were successful, there's an inference from that complaint that there was an attempt to do this because he demanded and I didn't cooperate. So that's readily inferable that that would apply. I think that I've pretty much exhausted my comments on this, Your Honors. Okay. If you have any questions. No. Doesn't look like it. Very good. Thank you very much for your arguments. The case just argued is submitted.
judges: Watford, Bennett, Lee